IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| H. DEWAYNE WHITTINGTON | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. WN-94-398 |
| | * | |
| BOARD OF EDUCATION OF SOMERSET COUNTY, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE
AND PLAINTIFF'S MOTION TO ENFORCE CONSENT DECREE**

**I.   INTRODUCTION**

On November 27, 1996, the above-captioned case was resolved by way of a Consent Decree. Pursuant to the Consent Decree, the Crisfield Primary School was renamed as the H. DeWayne Whittington Primary School. A ceremony in honor of the renaming was held on January 15, 1997. These actions completely fulfilled the defendants' obligations under the Consent Decree.

The plaintiff is no longer satisfied with the terms of the Consent Decree. The plaintiff, nearly ten years later, now seeks to have a different school, i.e., the Carter G. Woodson Middle School, renamed as the H. DeWayne Whittington Primary School. The plain terms of the Consent Decree require no such action. Accordingly, as discussed below, the plaintiffs' Motion to Reopen Case and Motion to Enforce Consent Decree must be denied.

**II.    BACKGROUND**

The Court's November 27, 1996 Consent Decree:

> ORDERED that the Board of Education of Somerset County shall rename the Crisfield Primary School in Crisfield, Maryland as the "H. DeWayne Whittington Primary School." A ceremony in honor of the renaming shall be held during school hours on January 15, 1997. This Order is permanent in nature and shall remain in effect until the Court orders otherwise.

Exhibit 1.

The plaintiff acknowledges that the defendants have complied with the terms of the Consent Decree. *Motion to Enforce Consent Decree*, para. #5.[1]

The H. DeWayne Whittington Primary School serves a narrow population of students, i.e., students of pre-kindergarten age through the second grade. Due to decreasing student enrollment in the County, schools are being consolidated. The primary school program in the H. DeWayne Whittington Primary School will be closed at the end of the 2005-2006 school year. Starting with the 2006-2007 school year, elementary school students from kindergarten through the fifth grade will attend the Carter G. Woodson Middle School (formerly the Crisfield Colored School) which will remain named after Carter G. Woodson. Only the level of children served will change. This facility will be known as the Carter G. Woodson Elementary School and will serve students from all of the southern portion of Somerset County, not just students from Crisfield.[2]

---

[1] Attached as Exhibit 2 is a June 9, 2004 article from the *Crisfield Times* which contains a picture of the H. DeWayne Whittington Primary School.

[2] The sixth and seventh grade students who would have attended the Carter G. Woodson Middle School will now attend the Somerset 6/7 Intermediate School. The Intermediate School has not yet been named.

Following the closure of the pre-kindergarten through second grade program at the H. DeWayne Whittington Primary School, the building will become surplus property. Accordingly, pursuant to the Annotated Code of Maryland, *Education Article* § 4-115(c), the building will be transferred to the county commissioners. The building will be used primarily to house a Head Start program operated by SHORE UP[3], a non-profit organization that operates Head Start pre-school programs.[4] While the Board will no longer control the naming of the building after it is transferred to the county commissioners, the Board has received no information that the name of the building will be changed.[5]

**III.  DISCUSSION**

The defendants have, and continue to, fully comply with the Court's Consent Decree. In compliance with the Consent Decree, the Crisfield Primary School was renamed the H. DeWayne Whittington Primary School. It has not been renamed since. The plaintiff acknowledges this. *Motion to Enforce Consent Decree*, para. #5.

Ignoring the plain terms of the Consent Decree, the plaintiff now requests that the Court "order that the building formerly known as the Crisfield Colored School[6] ... be renamed the H. DeWayne Whittington

---

[3]  The plaintiff is currently the Chairperson of the Board of SHORE UP.

[4]  The plaintiff mistakenly states that at the end of the 2005-2006 school year "the building housing the Crisfield primary school will close." *Motion to Enforce Consent Decree*, para. #6. The building will not be closed. It will be put to a new use.

[5]  Further, the defendants have offered to rename the J. M. Tawes Technology and Career Center as the H. DeWayne Whittington Career and Technology School. This is the same building that also houses the Board of Education, which the Board informally has also offered to name after the plaintiff. The plaintiff has declined these offers.

[6]  Since approximately 1951, the Crisfield Colored School has been known as the Carter G. Woodson Middle School.

Primary School before the beginning of the 2006-2007 school year." *Motion to Enforce Consent Decree*, para. #13. The plaintiff thus seeks to have a different school, one not mentioned in the Consent Decree, named after him.[7] The plaintiff feels that this newly chosen school is "an even more appropriate way to honor his achievements in education than was the previous location."[8] *Motion to Enforce Consent Decree*, para. #11. Simply put, the plaintiff is seeking to change the terms of the Consent Decree. This he can not do.

> As stated in *Johnson v. Robinson*, 987 F.2d 1043 (4th Cir. 1993):
>
> Even given their distinctive character as agreements backed by the authority of the court, consent decrees are to be interpreted as contracts. *Willie M. v. Hunt*, 657 F.2d 55, 59-60 (4th Cir. 1981). The binding force of a consent decree comes from the agreement of the parties. *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522, 106 S.Ct. 3063, 3075, 92 L.Ed.2d 405 (1986). A federal district court may not use its power of enforcing consent decrees to enlarge or diminish the duties on which the parties have agreed and which the court has approved. *See United States v. Michigan*, 940 F.2d 143, 159 (6th Cir. 1991); *United States v. Western Elec. Co.*, 894 F.2d 430, 435 (D.C. Cir. 1990); *Brewster v. Dukakis*, 687 F.2d 495, 497 (1st Cir. 1982).

*Johnson*, 987 F.2d at 1046.

"Consent decrees are entered into by parties to a case after careful negotiation has produced an agreement on their precise terms." *Willie M. v. Hunt*, 657 F.2d 55, 59 (4th Cir. 1981). Given its contractual nature, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id*. at 60. "A court thus has no authority to expand or contract the judgment's terms to reflect what might have been." *Id*. Continuing, the Court in *Willie M.*

---

[7] He also seeks to have what will be an elementary school denoted as a primary school.

[8] The plaintiff's sentiment is not shared by the local chapter of the NAACP. While the local chapter supports the naming of some school after the plaintiff, they do not want the Woodson School renamed. Exhibit 3.

held that:

> From all this we take two cardinal principles for interpreting the consent judgment here in issue. First, that its meaning is properly sought within the confines of the judicially approved documents expressing the parties' consent. Second, that its meaning is to be sought in what is there expressed and not in the way it might have been written had the plaintiffs established their full rights in litigation or if it had been written to satisfy the purposes of only one of the parties to it.

*Willie M.*, 657 F.2d at 60.

The requirements in the Court's November 27, 1996 Consent Decree are clear. The Board of Education of Somerset County was to rename the Crisfield Primary School as the "H. DeWayne Whittington Primary School" and a ceremony in honor of the renaming was to be held during school hours on January 15, 1997. The Board has complied with these terms and no more can be required.

The plaintiff, however, plainly seeks more than the Consent Decree requires. Effective the start of the 2006-2007 school year, the Carter G. Woodson Middle School will be converted into use as an elementary school and will be known as the Carter G. Woodson Elementary School. Although the Consent Decree only required the renaming of the Crisfield Primary School, the plaintiff seeks to have the Carter G. Woodson Middle School renamed for him. This is not what the plaintiff bargained for in 1996. While the plaintiff believes that this is "an even more appropriate way to honor his achievements," it is not required by the Consent Decree.

The plaintiff contends that it is "the primary school attended by children from Crisfield" that must be named the H. DeWayne Whittington Primary School. *Motion to Enforce Consent Decree*, para. #13. See also, *Motion to Enforce Consent Decree*, para. #8 (The "new Crisfield primary school, when it opens in the old Crisfield Colored School building, should be renamed the Whittington Primary School. That is, <u>the name of the school should follow the primary school children</u>." Emphasis added.) That is not what the

Consent Decree requires. Only the Crisfield Primary School was to be renamed. Not some other school that may house primary school aged students from Crisfield.[9] The Consent Decree ordered that "the Board of Education of Somerset County shall rename the Crisfield Primary School in Crisfield, Maryland as the 'H. DeWayne Whittington Primary School.'" It did not order, as plaintiff now desires, that "the Board of Education of Somerset County shall rename the primary school attended by children from Crisfield as the 'H. DeWayne Whittington Primary School.'" The plaintiff can achieve his goal only with a re-writing of the Consent Decree.

As a prior Superintendent of the Somerset County Public Schools, the plaintiff was keenly aware that changing population demographics could impact which schools area students would attend. As the population shifts, individual school attendance zones are sometimes redrawn. Sometimes, as occurred here, schools will be closed or consolidated. If the plaintiff wished to have "the primary school attended by children from Crisfield" named for him "in perpetuity" (*Motion to Enforce Consent Decree*, para. #13), he should have secured that in the Consent Decree. He did not. He secured the renaming of the Crisfield Primary School. That is what he received, and no more can be required. *Willie M. v. Hunt,* 732 F.2d 383, 386-387 (4th Cir. 1984) (denying additional relief and faulting plaintiffs' counsel for failing to craft a consent decree that clearly defined the plaintiff class.)

*Proctor v. State Government of North Carolina, Executive Branch*, 689 F.2d 491 (4th Cir. 1982), provides a helpful contrast and analogy. In settlement of her Title VII claim, Proctor agreed to a consent

---

[9] The Consent Decree speaks only of renaming the "Crisfield Primary School." The plaintiff, however, makes repeated reference to the "Crisfield primary school." *Motion to Enforce Consent Decree*, para. #6, 8, 9,11, and 13. Thus, whereas the Consent Decree clearly applies to only one specific school, the plaintiff would re-write the Consent Decree to apply to the school serving primary students from Crisfield, whatever that school may be.

order through which she was "entitled to continue in her present position with defendant Department of Human Resources". *Id*. at 492. Shortly after the entry of the consent order, the defendants made two changes in the conditions of her employment. She was assigned an additional supervisor and certain job functions she had previously performed were transferred to another office. *Id*. at 492-493. Believing that any substantive changes to her position violated the consent order, Proctor filed a motion seeking enforcement of the order. The Court of Appeals rejected Proctor's premise and held "that the consent decree is not violated by changes in plaintiff's position decided upon in the exercise of sound managerial discretion and motivated by legitimate business reasons." *Id*. at 494.

In the present case, it is uncontested that the Board of Education renamed the Crisfield Primary School in honor of the plaintiff. It is further uncontested that the school has not been renamed since. Plaintiff's name remains on the building. Thus, the Consent Decree has not been violated. However, pursuant to *Proctor*, with the closing of the school program and the building being transferred to the county commissioners, the plaintiff's name may be removed from the building. The plaintiff does not, and credibly could not, assert that the H. DeWayne Whittington Primary School was closed for anything other than legitimate administrative reasons. Just as legitimate business reasons would permit the *Proctor* defendants to change the conditions of Proctor's employment without violating the consent decree, legitimate administrative reasons permit the Board to close the program in the H. DeWayne Whittington Primary School without violating the Consent Decree. The Board, however, has not taken the additional step, as *Proctor* would permit, of removing the plaintiff's name from the building. Indeed, the Board has been very solicitous of the plaintiff, as evidenced by its offer to rename the J. M. Tawes Technology and Career Center or the Board of Education in his honor.

In sum, the plaintiff is requesting that the Court "order that the building formerly known as the Crisfield Colored School ... be renamed the H. DeWayne Whittington Primary School before the beginning of the 2006-2007 school year." *Motion to Enforce Consent Decree*, para. #13.  This request patently goes beyond the requirements of the Consent Decree which only required the renaming of the Crisfield Primary School.  The Court should reject the plaintiff's invitation to re-write the Consent Decree.  The plaintiff has received what he bargained for, the Board agreed to, and the Court ordered.

## IV.     CONCLUSION

For all of the foregoing reasons, the plaintiff's Motion to Reopen Case and Motion to Enforce Consent Decree should be denied.

Respectfully submitted,


_____/s/_____
Judith S. Bresler
Federal Bar No. 03481
REESE AND CARNEY, LLP
10715 Charter Drive
Columbia, MD  21044
(410) 740-4600


_____/s/_____
Eric C. Brousaides
Federal Bar No. 12497
REESE AND CARNEY, LLP
10715 Charter Drive
Columbia, MD  21044
Phone: (410) 740-4600


_____/s/_____
Fulton P. Jeffers

Federal Bar No. 00593
REESE AND CARNEY, LLP
124 E. Main Street
P.O. Box 269
Salisbury, MD  21044
Phone: (410) 860-1888


Counsel for Defendants