IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| H. DEWAYNE WHITTINGTON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. WN-94-398 |
| | | (Chief Magistrate Judge Jillyn K. Schulze) |
| BOARD OF EDUCATION OF | * | |
| SOMERSET COUNTY, *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \*   ooo0ooo   \* \* \* \* \*

**REPLY TO OPPOSITION TO PLAINTIFF'S MOTIONS TO
REOPEN CASE AND TO ENFORCE CONSENT DECREE**

The Board of Education of Somerset County ("the Board") ignores the Consent Decree's provision that it is "permanent in nature," an approach that would write that provision out of the Decree and deprive Dr. Whittington (and the Crisfield community) of the benefit ordered by the Decree. To the contrary, both that provision and the rest of the Decree can be given effect by continuing to apply the Decree's requirements to the newest location of the Crisfield Primary School. Alternatively, under the Board's view that the Consent Decree does not address the current situation, the closing of the current Whittington Primary School constitutes a significant change of circumstance that warrants revision of the Decree, and the proposal to keep Dr. Whittington's name on the school that will soon house Crisfield's primary school students would constitute an appropriate modification, suitably tailored to the changed circumstance.

**ARGUMENT**

I.   **The Consent Decree Permanently Requires the Naming
of the Primary School in Crisfield for Dr. Whittington.**

Ignoring the last line of the Consent Decree, which provides, "This Order is permanent in nature and shall remain in effect until the Court orders otherwise," the Board argues that its obligations under the Consent Decree were "completely fulfilled" by the renaming of the Crisfield Primary School as the H. DeWayne Whittington Primary School on January 15, 1997. Defs.' Opp'n at 1. But if the naming ceremony were all that the Decree required, there would have been no need to provide for the Order's permanent effect. The last sentence of the Decree is there for a reason: to assure that the Crisfield Primary School permanently remains the Whittington Primary School. To interpret the Decree otherwise would violate the maxim of interpretation that all provisions of a contract (or Consent Decree) should be given effect, and none should be considered surplusage.

As explained in the Motion to Enforce Consent Decree, a logical reading of the Decree requires that the Whittington Primary School name be affixed to the building attended by Crisfield primary school children – whether at the old Crisfield Primary School building, as it has been for the past decade, or at the former Crisfield Colored School/Woodson Intermediate School building when it becomes the Crisfield primary school for decades to come. The Decree provides for the permanent naming of the primary school, regardless of which building in Crisfield houses the school; it applies to "the Crisfield Primary School in Crisfield, Maryland," with no restriction as to the street address or to the then-existing building.

Contrary to the Board's assertion, it is the Board, not Dr. Whittington, that seeks to change the terms of the Consent Decree. The Board seeks to delete the Decree's provision that

2

the renaming shall be permanent. And it seeks to limit the naming requirement to "the building then housing the Crisfield Primary School" rather than, as it is written, to "the Crisfield Primary School" without limitation to a particular building or address. Neither change should be allowed, and the Decree should be interpreted, consistently with its language, to apply to whatever building houses the Crisfield primary school.

    **II.**    **Alternatively, Changed Circumstances Warrant Modification of the Decree to Require Whatever School Building Houses Crisfield Schoolchildren for the Primary Grades to be Named for Dr. Whittington.**

The Board's argument fails for a second reason. By contending that new demographic conditions have forced the Board to close the Whittington Primary School and to move the children attending that school to another primary school without transferring the name of the school, the Board has made out a textbook case of unforeseen circumstances justifying modification of the Consent Decree under Rule 60(b)(5). The case law provides that when changed circumstances prevent compliance with consent decrees or render consent decrees ineffective, courts may and should modify the decrees to resolve the problems created by the changed circumstances. Accordingly, if the Board is correct that the Consent Decree as currently worded does not require the continued naming for Dr. Whittington of whatever building houses the Crisfield primary school, the Court should find that the circumstances contemplated by the Decree have changed and the changed circumstances warrant a suitable modification of the Decree to require that whatever building houses the primary school for children from Crisfield be named the Whittington School.

### A.   The Closing of the Whittington Primary School is a Significant Unforeseen Change of Circumstances.

At the time the Court entered the Consent Decree, no one contemplated that the Whittington Primary School would be closed.  The Decree provided that the school's renaming for Dr. Whittington would be "permanent" – not just for nine years.  The Board's reading of the Decree to apply only to the building that housed the Crisfield Primary School in 1996 would effectively terminate the Decree in 2006, a significant change of circumstances for a Decree that by its terms "is permanent in nature and shall remain in effect until the Court orders otherwise."

In *Rufo v. Inmates of Suffolk County Jail*, the Supreme Court observed that the standard for modifying consent decrees is quite flexible and held that if a court finds "a significant change of circumstances warrants revision of the decree . . . the court should consider whether the proposed modification is suitably tailored to the changed circumstances."  502 U.S. 367, 383 (1992).  *See also Thompson v. U.S. Dep't of Housing & Urban Dev.*, 404 F.3d 821, 826-27, 831 (4th Cir. 2005) (applying *Rufo* to modify consent decree due to changed circumstances).[1]

---

[1] Although *Rufo* was an institutional reform case and addressed its new test for modification of consent decrees in that context, its test applies here: (1) the Decree affects thousands of students, parents, teachers, and administrators for years to come, so its impact is public in nature; (2) the Decree is permanent and benefits the Crisfield community generally and not just Dr. Whittington personally; (3) the underlying litigation was public in nature, involving intentional race discrimination by a publicly elected school board; and (4) the provision was first recommended by the jury in the spirit of institutional reform to symbolize Dr. Whittington's struggle against racism and to deter future racial injustices, and that objective lies at the heart of the Decree.  Even if this were a purely private dispute, *Rufo* would apply.  This Court and numerous others have applied the *Rufo* test to all motions to modify consent decrees under Rule 60(b)(5), even commercial cases such as antitrust and patent infringement.  *See Life Tech., Inc. v. Promega Corp.*, 189 F.R.D. 334, 336 (D. Md. 1999) (applying *Rufo* to modify consent decree entered in patent infringement litigation); *United States v. Western Elec. Co.*, 46 F.3d 1198, 1203 (D.C. Cir. 1995) (*Rufo* standard for modification "relates to all types of injunctive relief," including antitrust consent decree); *see also United States v. Eastman Kodak Co.*, 63 F.3d 95, 101-02 (2d Cir. 1995); *Bldg. & Constr. Trades Council v. NLRB*, 64 F.3d 880, 887-88 (3rd Cir. 1995); *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 588 (6th Cir. 2004) ("[t]he Court made clear in *Rufo* that this rule should not be limited to institutional-reform litigation"); *Hendrix v. Page*, 986 F.2d 195, 198 (7th Cir. 1993)(Posner, J.).

4

The Board does not deny that the closing of the Whittington Primary School and the transfer of that building to a new owner that has no obligation to keep Dr. Whittington's name on it is a significant change in circumstances, nor does it deny that this change was not contemplated when the Consent Decree was entered.  This change would deprive Dr. Whittington of the benefit of the Decree's order that the Crisfield Primary School be named for him in perpetuity.  Thus, if the Decree does not already require the continued naming of the new Crisfield Primary-Elementary School for Dr. Whittington, the Court should find that there is a significant change in circumstances that warrants the modification of the Decree.

The Board's Opposition relies on two old cases that predate *Rufo* and therefore do not apply the proper standard to determine whether a modification of a consent decree was appropriate; moreover, the facts of both cases differ substantially and materially from the facts here.  First, the Board relies on an opinion from 1981 regarding the interpretation of a consent decree's definition of the class members to whom it applied.  Defs.' Opp'n at 4-5, citing *Willie M. v. Hunt*, 657 F.2d 55 (4th Cir. 1981).  There was no allegation in *Willie M.* that any relevant circumstances had changed.  Second, the Board cites *Proctor v. North Carolina*, a decision predating *Rufo* by ten years, which held that changing the plaintiff's supervisor did not violate a consent decree that had ordered that she was "entitled to continue in her present position with defendant Department of Human Resources."  689 F.2d 491, 492-3 (4th Cir. 1982).  The decision did not address the question of a change of circumstance, as it merely found that the change of supervisor did not violate the consent decree.  Unlike this case, the consent decree remained in effect and continued to prohibit defendant from discontinuing plaintiff in her position.  *Proctor* accordingly did not consider whether the change in supervisor was a material change of circumstance.  Nothing in that opinion suggests that the consent decree no longer would have

5

applied if the State had transferred the plaintiff's division in the North Carolina Department of Human Resources to the Department of Education – a closer analogy to the facts here than the change in supervisor considered there.

Nowhere in its brief does the Board discuss or even cite *Rufo* or any of the cases (in the Fourth Circuit or elsewhere) that apply the *Rufo* standard. If the Board believes that the closing of the Whittington School terminates its obligations under the Consent Decree, it was obligated under *Rufo* to return to Court, inform the Court of the changed circumstances, and ask the Court to modify the Decree to allow it to name a different school for Dr. Whittington or to relieve it from its permanent obligations. The fact that the Board failed to do so (and still has not done so) indicates contempt for the Court's order.

### B. Naming the New Primary-Elementary School in Crisfield for Dr. Whittington is a Suitably Tailored Modification of the Decree.

If a changed circumstance warrants a modification of the Decree, the question for the Court is "whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383, *quoted in Thompson*, 404 F.3d at 831. The Board does not dispute that the proposed modification of naming the new Crisfield Elementary School for Dr. Whittington is suitably tailored to the changed circumstances. (The Board's Opposition asserts that the new school should be denominated an elementary school rather than a primary school. Defs.' Opp'n. at 2. Consistent with that new information, plaintiff amends his motion to request that the new school be named the "H. DeWayne Whittington Elementary School.") The question here is which is more suitably tailored to the changed circumstance of the Whittington Primary School's students being moved to the old Crisfield Colored School (more recently known as the Woodson Middle School): (1) Dr. Whittington's proposal of his name following the students to their new

6

school, or (2) the Board's position that it need do nothing but leave the Dr. Whittington's name on the old building until it is transferred it to a new owner. (In a footnote, the Board mentions an "informal offer" to put Dr. Whittington's name on a Career and Technology Center in Westover, a different part of the county, but the Board does not recognize that it has any legal obligation to keep Dr. Whittington's name on any building once the current Whittington Primary School is closed. *See* Defs.' Br. at 3 n.5.)

As explained in Plaintiff's initial memorandum, renaming the old Crisfield Colored School/Woodson Intermediate School building for Dr. Whittington when it opens to house elementary school children from Crisfield and environs continues to give effect to the Decree in all material respects. Moreover, as explained in that memorandum, naming the old Crisfield Colored School for Dr. Whittington is a uniquely appropriate given his history with that school.

Other than its quibble that the new school should be called an "elementary" rather than a "primary" school, the Board offers no argument that Dr. Whittington's proposal is not suitably tailored to the changed circumstances.[2] Nor does the Board argue that its proposals (either no longer naming any school for Dr. Whittington or naming a technology center in Westover for him) are so tailored. As explained in paragraph 10 of Plaintiff's Motion to Enforce Consent

---

[2]In a footnote, the Board offers the irrelevant claim that the local chapter of the NAACP "feel[s] that the name of the Carter G. Woodson School should remain." Letter from Ballard to Brofee, Defs.' Ex. 3, cited in Defs.' Opp'n at 4 n. 8. Nothing in Mr. Ballard's letter (which explicitly "support[s] the naming of a school after Dr. H. DeWayne Whittington") is inconsistent with Plaintiff's suggestion that the Board name the new middle school for Dr. Woodson. Contrary to the implication in the Board's footnote, there is overwhelming support in the African-American community in Somerset County for naming the old Crisfield Colored School/Woodson Intermediate School building for Dr. Whittington, as evidenced by a petition signed by over 350 alumnae of those schools and other community members. Petition, attached as Exhibit 3.

Decree, the Tawes Technology and Career Center is not in Crisfield and does not house a primary school, and so is a far less suitable substitute for the current building.

## CONCLUSION

For all of these reasons, as well as the reasons in Plaintiff's initial memorandum, the Court should reopen the case and hold that the Consent Decree permanently requires the Board to name the building that houses primary school students in Crisfield to be named the Whittington School (and thus the old Crisfield Colored School/Woodson Intermediate School building should be renamed the H. DeWayne Whittington Elementary School for the coming school year and thereafter so long as it houses those students).  Alternatively, the Court should hold that (a) the closing of the current Whittington Primary School and the transfer of the students housed in that school to the old Crisfield Colored School/Woodson Intermediate School building is a significant change of circumstances that warrants revision of the Decree and (b) Plaintiff's proposed modification is suitably tailored to the changed circumstance.

Respectfully submitted,

/s/

Mitchell Y. Mirviss, Bar No. 05535
Venable LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, Maryland 21201
(410) 244-7400

Andrew D. Freeman, Bar No. 03867
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
410-962-1030

*Attorneys for Plaintiff H. DeWayne Whittington*