**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **H. DEWAYNE WHITTINGTON** | * | |
| | * | |
| **v.** | * | **CIVIL ACTION NO. WMN 94-398** |
| | * | |
| **BOARD OF EDUCATION OF SOMERSET COUNTY, et al** | * | |
| | * | |

**MEMORANDUM**

Presently pending and ready for resolution are Plaintiff Dr. H. DeWayne Whittington's (Dr. Whittington) Motion to Reopen Case (Dkt. No. 121) and Motion to Enforce Consent Decree (Dkt. No. 122), and a Motion for Leave to File Surreply filed by Defendant Board of Education of Somerset County (the Board). (Dkt. No. 127). No hearing is necessary. For the reasons that follow, the motions will be denied.

1. **Background**.

The basic facts are not disputed. The Consent Decree was entered on November 2, 1996, as part of a settlement agreement which resolved all issues in this discrimination case. The Decree provided that:

> [T]he Board of Education of Somerset County shall rename the Crisfield Primary School in Crisfield, Maryland as the "H. DeWayne Whittington Primary School." A ceremony in honor of the renaming shall be held during school hours on January 15, 1997. This Order is permanent in nature and shall remain in effect until the Court orders otherwise.

The Crisfield Primary School was renamed, and the H. DeWayne Whittington Primary School served primary age children (pre-kindergarten through second grade) until the end of the 2005-2006 school year. The Board has decided to close the Whittington Primary School at the end of the 2005-2006 school year. The school's former students will, along with other students, be educated at a newly renovated building which was formerly named the Carter G. Woodson

Middle School. The renovated school will serve students from kindergarten through fifth grade, and the Board intends to rename it the Carter G. Woodson Elementary School.

2. **Analysis and Discussion**.

Dr. Whittington contends that, pursuant to the Consent Decree, he is entitled to have this school renamed the H. DeWayne Whittington Elementary School. He notes that the Consent Decree is specified to be permanent in nature. He asserts that "there will continue to be a Crisfield primary school . . . . The fact that it will be housed in a different building does not change the circumstances of the order." Pl.'s Mo. at ¶ 11.

This is incorrect. There will not continue to be a "Crisfield primary school." The Crisfield/Whittington Primary School is not simply being moved to another building. Rather, it is being consolidated with a broader program and will cease to exist. Its students will attend a new school serving six grades, three of which were not taught at the Whittington Primary School.

Dr. Whittington's reply acknowledges the difference between the Whittington Primary School and the new school. His motion sought an order that the new school "be renamed the H. DeWayne Whittington Primary School," Pl. Mo. at 3-4, but, in light of the information that the new school will also house grades three, four, and five, his reply "amends his motion to request that the new school be named the 'H. DeWayne Whittington Elementary School.'" Pl. Reply at 6.

This admittedly necessary name change is significant. The Consent Decree is specific to the Crisfield Primary School and does not require that, upon the closing of that school, any new school which Crisfield's primary students attend also bear Dr. Whittington's name. It requires only that the Crisfield Primary School permanently bear his name; in Dr. Whittington's words,

"that the Crisfield Primary School permanently remains the Whittington Primary School." Pl. Reply at 2. This requirement cannot now be revised to apply to some other school simply because some of the student population will be the same.

Dr. Whittington argues that changed circumstances justify modification of the Consent Decree. He asserts that when the Decree was entered, "no one contemplated that the Whittington Primary School would be closed." However, it is inconceivable that the parties, either Dr. Whittington with his long tenure as a public educator and prior service as Superintendent of the Somerset County Public Schools, or the Board which oversees those schools, reasonably could have assumed that any school would exist forever. It was Dr. Whittington, not the Board, who had reason to provide for this contingency, and he is not entitled to have the Decree altered because of the failure to do so.

Dr. Whittington also contends that new demographic conditions underlying the Board's decision to close the Whittington Primary School constitute new circumstances which warrant modification of the Decree to "require that whatever building houses the primary school for children from Crisfield be named the Whittington School." Pl. Reply at 3. He seeks application of the standard for modifying consent decrees set out in *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367 (1992). There, in the context of institutional reform litigation, the Court held that modification can be ordered if the moving party shows a significant change in circumstances that makes continued compliance unworkable, relying heavily on the public interest nature of such litigation. *See also Thompson v. U.S. Dep't of Housing and Urban Dev.*, 404 F.3d 821, 827 (4th Cir. 2005) (modification permissible where compliance becomes "substantially more onerous," the decree is "unworkable because of unforeseen obstacles," or enforcement without

modification would be "detrimental to the public interest").

Nothing in these opinions alters the fundamental contractual nature of consent decrees, *Rufo*, 502 U.S. at 378, or suggests that modification is equally appropriate when a consent decree is designed to address an individual wrong. Contrary to the situations presented in *Rufo* and *Thompson*, this Decree was not entered to serve the public interest or to benefit a large number of persons. Although Dr. Whittington now cites its impact on the community, even he does not argue that it was created to further the community's interest.[1] Like all resolutions of discrimination cases, particularly those which are public in nature, it no doubt had a positive impact on the community. But the fundamental nature of this settlement was contractual, and its purpose was to vindicate an individual's rights.

In sum, this is not a case in which changed circumstances require modification of a consent decree. Rather, it is a case in which a consent decree has run its course. There has been full compliance with the requirement that a specified school permanently bear Dr. Whittington's name. When that school ceases to exist, so does the Decree's requirement.

Date: July 27, 2006

/S/
JILLYN K. SCHULZE
United States Magistrate Judge

[1] Both parties address the policies underlying the naming of the new school. Dr. Whittington notes that it is in the same building which housed the school he himself attended, and that his close ties to Crisfield and his role model status for its children were important factors in his original settlement negotiations. The Board responds with a letter from the local chapter of the National Association for the Advancement of Colored People opposing the removal of Carter G. Woodson's name from the new school, and Dr. Whittington replies with a petition which supports renaming the school after him. Dr. Whittington's connection to the building and the children, and the sentiments of the community, are certainly appropriate considerations in selecting a name for the new school. However, they had no bearing on the Court's decision to enter the Decree. Moreover, the Court's previous acceptance of an agreement as to a school's name would not warrant judicial selection of another school's name.